Price, J.
The facts disclosed at the trial are not in dispute, as counsel for defendant in error state in their brief and in oral argument, that the brief for plaintiff in error correctly states the facts, and we are therefore authorized to adopt such statement, rather than search the record and restate them in another form. We add other facts contained in the record. Counsel differ mainly as to the conclusions which should be drawn from all the facts.
On the 12th day of November, 1904, The Hamilton Machine Tool Co. sent to Young & Lane at Knoxville, Tennessee, a promissory note, made, payable to the order of.Young & Lane, in the sum of $948.15, in four months after its date with six per cent.' interest per annum, requesting them to procure its discount, and remit the proceeds, , of same to The Hamilton Machine Tool Co. .
This note, with another not involved, in this ■case, was enclosed in a letter of which the following .is a copy: - . . ..
*194 “11-12-04.
“Messrs. Young & Lane,
“Knoxville; Tenn.
“Gentlemen: — In accordance with Mr. Hilker’s understanding with you yesterday, we herewith enclose our two notes as follows:
“Nov. 12th, payable Feb. 23rd, 1905 — $920.80.
“Nov. 12th, at 4 months — $948.15.
“These notes you are to discount and send us proceeds together with your check for the difference to take up our note due December 10th for $2,683.47.”
The Hilker mentioned in the above letter was president of the tool company, plaintiff in error.
The note in this controversy was executed by The Hamilton Machine Tool Co., at Hamilton, Ohio, payable to the order of Young & Lane, and made payable at the Union Savings Bank & Trust Co., Cincinnati, Ohio. On the 14th day of November, 1904, Young & Lane sent this note, with the other, in a letter to the Memphis National Bank, at Memphis, Tennessee, requesting the bank to “place the proceeds of same to their credit on the books of the bank.”
This is the letter referred to:
“Knoxville, Tennessee, Nov. 14, 1904.
“Memphis National Bank,
“Memphis, Tenn.
“Dear Sirs: — Our records show our line of discounts with you .reduced about $2,000 this month, and we will be accommodated by your placing the *195 enclosed to our credit, namely, Hamilton Machine Tool Co. $948.15, due March 12. * * *
“Yours truly,
“Young & Lane,
“Frank Lane.”
On the back of said note appears the endorsement: “Young & Lane, Frank Lane.”
The bank received this paper so endorsed, discounted it and placed the proceeds, amounting to $928.40 to the credit of Young & Lane, as requested by them.
On November 5, 1904, ten days before the bank received this note and discounted it, the account of Young & Lane was overdrawn to the. extent of $436.55, and it remained thus overdrawn up to the time the note was so received. When the note was discounted and its proceeds credited to the account this overdraft of $436.55, was charged off, leaving to the credit of Young & Lane the sum of $491.85. On the 17th day of November, a check for $500 was drawn by Young & Lane against this credit, which was honored by the bank and charged to the account, leaving it again overdrawn to the extent of $8.15.
No part of the proceeds of the note mentioned was ever received by the Hamilton Machine Tool Company.
The note was not paid at maturity, the bank brought suit upon it, and recovered, as appears in our first statement.
The following concession appears in the brief for plaintiff in error: “The plaintiff in error con *196 cedes that it is liable for the $491.85, which Young & Lane withdrew from the bank on their check of November 17, 1904, but not for the $436.55 which the bank applied toward the satisfaction of Young & Lane’s overdraft, and it is for the purpose of having the judgment in this case reduced by the amount of this $436.55 that this proceeding is brought here.”
This concession means that the Memphis Bank was not at fault in recognizing as valid, the check of Young & Lane for $500, drawn November 17, 1904, and charging it against the proceeds of the note, the maker of the note discounted by the bank, admitting as it does, “that when the bank discounted the note, it was not aware of these facts.” The facts referred to of which the bank was not aware, were that the note “was not the property of Young & Lane, but of The Hamilton Machine Tool Co., Young & Lane being simply the agents of The Llamilton Machine Tool Co. for the special purpose of procuring its discount and remitting the net proceeds ' of same to Hamilton Machine Tool Co.”
. The foregoing confession is no more than the facts compel, and tends to an easy solution of the contention, that the bank was not justified in applying proceeds of the discount to extinguish the overdraft of $436.55.
We find that the note in question was payable to order of Young & Lane — negotiable in form and the bank purchased it from the payees in the usual course of business, who endorsed it in blank, thus vesting the legal title in the bank. Instead of paying the proceeds to Young & Lane over the *197 counter, the bank, at their request placed the same to their credit. It appears that Young & Lane had discounted other paper at this bank, not only-on this occasion, but had been transacting business with it previously, so that a regular account current existed between it and Young & Lane when this purchase was made. It so happened that they owed the bank $436.55 as an'overdraft on their account, and all the proceeds were placed to their credit, and after extinguishing or satisfying such overdraft, the bank owed Young & Lane on the account $491.85, or, in other words, they had a credit balance of that amount.
As before stated, by the check of November 17th, for $500 drawn on and honored by this bank, they exhausted the credit balance, which left the account again overdrawn in the sum of $8.15.
It being conceded that the bank was 'justified in honoring this check, because it had no knowledge of the mere agency of Young & Lane, and no knowledge of any relations they sustained to The Hamilton Machine Tool Co., maker of the note, except that shown by the note 'itself, it must also be conceded, that the bank acted in good faith, for it appears in the evidence of its cashier, and not controverted, that Young & Lane, in the course of their dealings with the bank, on previous occasions had overdrawn their account, which they subsequently made good, as they did in the discounting of this note — ostensibly their own note — and the bank acted upon it as their note.
In respect to extinguishing the overdraft, it is urged, that while the bank was ignorant of the agency of Young & Lane for the maker of the *198 note, it used the proceeds of the discount in satisfying a pre-existing debt, which they could not do with funds actually belonging to the principal— the maker of the note. Is this position sound? It is entirely clear, and we think it cannot be controverted, that in discounting the note for Young & Lane, the bank became its absolute owner and that too in good faith. It was sent from Hamilton, Ohio, to. Young & Lane, at Knoxville, Tennessee, that they might get it discounted. To get it discounted would, or might, necessitate its sale. They were entrusted with such use of the note as would bring about its discount, of course for the benefit of the maker, but of the latter it is conceded the bank had no knowledge, and there was nothing on the face of the note, or in the negotiation, to excite suspicion or put the bank on inquiry.
Therefore, Young & Lane were authorized to hold themselves out to anyone who would discount the paper, as its absolute owners, as thev were the payees named therein.
But it was urged in argument that, as to this overdraft, the bank would not be the loser, if the court should credit its amount on the judgment in this case, for the reason that it has recourse on Young & Lane for that overdraft. The facts are against this ■ claim. E. B. McHenry, who was cashier of the Memphis bank, testified to his acquaintance with Young & Lane, especially Lane, and that “in May, I think it was the 24th or 25th of May, perhaps, 1904, the firm of-Young & Lane opened an account with the bank and did business there, was there for some time afterwards,, making *199 deposits and having notes discounted, and checking on their account, just as an ordinary customer would do.” He also states that this bank had previously discounted two or three notes made payable to Young & Lane by The Hamilton Machine Tool Co., and that they were made payable at the same bank in Cincinnati mentioned in note referred to in this case.
The rate of discount was six per cent., and he states that the bank paid full value less this discount.
Another important fact in the record, is that but little if any business was transacted with this bank by Young & Lane after the purchase of the note, and certainly none after the bank became aware that anything was wrong or irregular between them and their principal. This concern, Young & Lane, resided at Knoxville, Tennessee, and sent the note with letter to the bank with instructions quoted above. After this purchase, and in January, 1905 — after they had overdrawn their account by the check of November 17, 1904— business between them and the bank ceased. • It has not been pointed out by counsel, and we do not know, how the bank could open up its account with Young & Lane — restore the charge of $436.55 overdraft — and pursue them for that amount. It had been paid and so entered on its books and the account closed, so far as business was concerned. By application of part of the proceeds to extinguishing the overdraft, the bank necessarily changed its position from that of a creditor to that of a debtor for the credit balance. This was *200 wiped out by check later, which admittedly was properly honored by the bank. . The bank had a claim for $8.15 overdraft and that was all. The former overdraft had been paid and defense of pajmient could have been sustained had the bank sued for it. It had no right of action against them.
We are convinced that the bank believed and had a right to believe the note belonged to Young & Lane, having purchased it before maturity and in good faith, and it should not suffer because the apparent owner’s u.sed part of the proceeds to pay their debt to the bank. Neither fair play nor any maxim of equity requires such result.
The authorities relied on by counsel for the parties are collected in the briefs, and we have attempted to state the legal conclusion that should be drawn from undisputed facts, and we therefore affirm the judgment.

Judgment affirmed.

Davis, Si-iaucic, Johnson and Donahue, JJ., concur.